FILED

13 OCT 15 PM 1:05

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KOGOK, Individually and on Behalf of All Others Similarly Situated; et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>T-MOBILE USA, INC. and DOES 1 through 300,<br><br>Defendants. | CASE NO. 13-CV-838 BEN (BLM)<br><br>**ORDER REMANDING ACTION TO SAN DIEGO COUNTY SUPERIOR COURT**<br><br>[Docket No. 15] |

Presently before the Court is Plaintiffs' Motion to Remand to State Court. (Docket No. 15.) For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

This wage and hour class action arises from Defendant T-Mobile USA, Inc.'s alleged failure to pay its California Retail Sales Associates ("RSAs") for their commissionable transactions. Plaintiffs David Kogok, Noe Perez, Xavier Pulido, and Jennifer Ramano are current and former RSAs who each allege to have been undercompensated by T-Mobile.

This action was originally commenced in the Superior Court of California, County of San Diego, on June 12, 2012. On July 13, 2012, T-Mobile filed the First Notice of Removal, based on diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. On July 16, 2012, the Honorable M. James Lorenz found that the First Notice of

Removal was facially deficient. Specifically, Judge Lorenz found that T-Mobile had not met its burden to show that the amount in controversy exceeded $5,000,000, as required by the Class Action Fairness Act ("CAFA"). On July 25, 2012, T-Mobile filed a Petition for Permission to Appeal Under 28 U.S.C. § 1453(c) the Remand Order. The Ninth Circuit denied the Petition on September 7, 2012. The action was remanded to state court.

On April 2, 2013, Plaintiffs filed the First Amended Complaint ("FAC"), which is the operative complaint. The FAC alleges: (1) failure to pay all wages when due; (2) unlawful repayment of wages; (3) failure to pay all overtime; (4) failure to provide accurate itemized employee wage statements; (5) failure to provide signed copy of commission contract and obtain signed receipt of the same; (6) failure to pay all wages due upon ending of employment; (7) unfair business practices; (8) breach of contract; and (9) violation of California Labor Code § 2698 *et seq.* On April 5, 2013, T-Mobile again removed this action by filing the Second Notice of Removal. Presently before the Court is Plaintiffs' Motion to Remand.

## DISCUSSION

Because federal courts are courts of limited jurisdiction, the removal statute is strictly construed against removal jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566 (internal quotation marks omitted). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

CAFA vests district courts with "'original jurisdiction of any civil action in which, inter alia, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,' and in which the aggregate number of proposed plaintiffs is 100 or greater, and any member of the plaintiff class is a citizen of a state different from any defendant." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994,

997 (9th Cir. 2007) (quoting 28 U.S.C. § 1332(d)). "The burden of persuasion for establishing diversity jurisdiction [rests] on the party asserting it. When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *The Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010) (internal citations omitted).

Plaintiffs argue that T-Mobile has failed to establish that: (1) the amount in controversy exceeds $5,000,000; and (2) any member of the plaintiff class is a citizen of a state different from any defendant.

## I. AMOUNT IN CONTROVERSY

Once an action is filed in state court, the defendant must allege and bear the burden of proof that the amount in controversy is above $5,000,000. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). In the removal petition, the defendant must set forth underlying facts supporting its assertion that the amount in controversy is over $5,000,000. *Id.* at 689. Conclusory allegations are insufficient. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

"A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, __ F.3d __, 2013 WL 4516757, at *6 (9th Cir. Aug. 27, 2013). "Under [the preponderance of the evidence] burden, the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds [the jurisdictional] amount." *Sanchez*, 102 F.3d at 404.

T-Mobile argues that the amount in controversy exceeds $5,000,000 for three claims: (1) the California Labor Code § 203 claim; (2) the California Labor Code § 2751 claim; and (3) the California Labor Code § 226 claim.

### A. California Labor Code § 203 Claim

The FAC alleges, "Plaintiffs Romano and Plaintiff Subclass 4 quit or were discharged from their employment and not paid timely. Since Defendants failed to

timely pay wages due, Plaintiff Romano and Plaintiff Subclass 4 are owed penalties pursuant to California Labor Code section 203." (FAC ¶ 82.) In addition, the FAC alleges that T-Mobile "failed to pay said employees any premium payments or timely payment pursuant to California Labor Code sections 201 and 202. Thus, Defendants are liable for waiting time penalties." (*Id.* ¶ 83.) Plaintiff Subclass 4 is defined as "[a]ll current, former, or prospective non-exempt employees of Defendant in the state of California who held the title Retail Sales Associates at any time during the Class Period who were not timely paid all wages due to them upon separation of their employment with Defendant, in violation of California Labor Code sections." (*Id.* ¶ 26.)

Under California Labor Code § 203, an employer who "willfully fails to pay" any wages due to an employee who is discharged or quits is subject to waiting-time penalties, equal to up to 30 days wages from the date that the final wages should have been paid.

T-Mobile argues that it has properly relied on Plaintiffs' allegations to establish the amount in controversy. According to T-Mobile, because Plaintiffs allege that T-Mobile failed to pay class members all wages due upon termination, the waiting-time penalties for the class members—the 2,450 California RSAs who were either resigned or discharged—amount to $5,067,090.

T-Mobile, however, erroneously assumes that every terminated employee never received timely final paychecks containing all wages owed. The FAC does not allege that every terminated employee received a late final pay check. Rather, Plaintiff Subclass 4 is limited to those terminated employees "who were not timely paid all wages due to them upon separation of their employment with Defendant." (FAC ¶¶ 26, 83.) In addition, the FAC limits even the derivative allegations to only those RSAs who also, according to proof, received untimely final pay. (FAC ¶¶ 26, 82-84 (referring to "said employees" within Subclass No. 4, which is limited to only those employees who "were not timely paid all wages due to them upon separation").)

Accordingly, Plaintiffs' allegations do not establish that over $5 million is in controversy for T-Mobile's alleged violations of California Labor Code § 203.

### B. California Labor Code § 2751 Claim

The FAC alleges that "[p]ursuant to Labor Code section 2751, Defendants were required to provide a signed copy of the Compensation Policy Documents to Plaintiffs and obtain a signed receipt of the same from Plaintiffs." (FAC ¶ 112.) However, "Defendants have never obtained or maintained a copy of the Compensation Policy Documents that was signed by those officers and directors charged with ratifying the Compensation Policy Documents. Nor has Defendant ever provided the Plaintiffs or the Class with a signed copy of the Compensation Policy Documents." (*Id.* ¶ 75.) Plaintiff Subclass 3 is defined as "[a]ll current, former, or prospective non-exempt employees of Defendants in the State of California who held the title Retail Sales Associate at any time during the Class Period, who have not been provided a signed copy of the applicable Compensation Policy Documents and/or for whom Defendant has failed to maintain a signed receipt evidencing delivery of that contract to the employee in violation of California Labor Code section 2751." (*Id.* ¶ 26.)

Under California Labor Code § 2751, "(a) Whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing . . . . . (b) The employer shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee . . . ." A plaintiff may seek penalties in the sum of $100 per aggrieved employee, per pay period for an initial violation, and $200 per aggrieved employee, per pay period for each subsequent violation. CAL. LAB. CODE § 2699(f)(2).

T-Mobile argues that it has submitted evidence that establishes the number of RSAs who received each of the allegedly unsigned Compensation Policy Documents during the Class Period. According to T-Mobile, because there were 12,381 alleged

- 5 -

13-CV-838

initial violations of § 2751, the total amount of penalties amounts to at least $1,238,100 (12,381 x $100). T-Mobile argues that it has also submitted evidence of the number of RSAs who received a subsequent unsigned Compensation Policy Document, resulting in a subsequent violation. According to T-Mobile, there were 7,514 RSAs who received a subsequent unsigned Compensation Plan Document, making the total amount in controversy for the subsequent violations at least $1,502,800 (7,514 x $200).

T-Mobile, however, erroneously assumes that the alleged § 2751 violation applies to every RSA. In fact, Plaintiff Subclass 3 is limited to those RSAs who "have not been provided a signed copy of the applicable Compensation Policy Documents and/or for whom Defendant has failed to maintain a signed receipt . . . ." (FAC ¶ 26.) Paragraphs 75 and 76 of the FAC allege only that T-Mobile failed to provide signed Compensation Policy Documents and to retain signed receipts for the named Plaintiffs and the Class. The FAC does not allege that every RSA did not receive a signed Compensation Policy Document, or that every RSA did not sign a receipt of such a Compensation Policy Document.

In addition, the evidence that T-Mobile submits does not establish that the alleged § 2751 violation applies to every RSA. Rather, it demonstrates only how many RSAs were employed during each year of the Class Period, and who remained employed for additional years during this time. (*See* Steele Decl. [Docket No. 1-5] ¶¶ 4-6.) T-Mobile has not submitted evidence confirming that all of these RSAs did not receive a signed copy of the annual version of the Compensation Policy Documents.

Accordingly, T-Mobile has not established by a preponderance of the evidence that over $5 million is in controversy for T-Mobile's alleged violations of California Labor Code § 2751.

### C. California Labor Code § 226 Claim

The FAC alleges that T-Mobile failed to "itemize all hourly rates of pay, including, without limitation, all overtime and retro-overtime rates of pay" on the

RSAs' wage statements. (FAC ¶ 70.) The FAC states that Plaintiff Subclass 2 is defined as those current, former or prospective RSAs during the Class Period "who have not been provided accurate itemized wage statements in violation of the California Labor Code and applicable wage orders." (*Id.* ¶¶ 26.) The FAC does not allege what number or percentage of the wage statements contain inaccuracies or omissions.

Under California Labor Code § 226(a), an employer is required to furnish itemized wage statements that include specific information. An employee "suffering injury as a result of a knowing and intentional failure by an employer" to comply with § 226 may recover penalties. CAL. LAB. CODE § 226(e)(1). The first time an employer fails to provide a proper itemized wage statement to an employee, the penalty is $50. *Id.* For each subsequent violation, the penalty is $100. *Id.* The maximum is $4,000 per employee. *Id.*

T-Mobile argues that it has established by a preponderance of the evidence that over $5 million is in controversy for T-Mobile's alleged violations of California Labor Code § 226. According to T-Mobile, it has submitted evidence demonstrating that there were at least 720 RSAs who, during the class period defined in the FAC, received more than 41 paystubs containing an aggregate amount for Retro-Overtime pay, but no associated hourly rate of pay. T-Mobile argues that if these 720 employees received the maximum penalty amount, this puts at least $2,880,000 in controversy for these alleged penalties ($4,000 x 720 = $2,880,000). Moreover, T-Mobile argues, there were 3,580 additional RSAs who received a total of 53,657 paystubs containing Retro-Overtime pay, each resulting in a minimum violation of $50. Therefore, the alleged additional amount in controversy for these penalties would be at least $2,682,850 ($50 x 53,657 = $2,682,850). According to T-Mobile's calculations, this puts the amount in controversy over $5 million ($2,880,000 + $2,682,850 = $5,562,850).

T-Mobile, however, erroneously assumes that all of the wage statements containing "Retro OT" are devoid of the applicable hourly rate and total hours worked. Based on this assumption, T-Mobile calculates penalties for every single RSA who has

received "Retro OT," regardless of whether or not the hourly rate and hours worked appeared on the corresponding wage statement. (*See* Solberg Decl. [Docket No. 1-6] ¶¶ 6-7.) T-Mobile has not presented any evidence that this is an accurate assumption, nor does such an allegation appear in the FAC. Accordingly, T-Mobile has not established by a preponderance of the evidence that over $5 million is in controversy for T-Mobile's alleged violations of California Labor Code § 226.

## II. DIVERSITY

A corporation is deemed to be a citizen of the state of its incorporation as well as the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). It is undisputed that T-Mobile is incorporated under the laws of Delaware. (Notice of Removal, Exh. E [First Am. Compl. ¶ 8]; Mattis Decl. ¶ 2.) However, Plaintiffs argue that T-Mobile submitted insufficient evidence of its principal place of business.

A corporation's principal place of business is its "nerve center":

> the place where a corporation's officers direct, control, and coordinate the corporation's activities. . . . And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz*, 559 U.S. at 92-93.

Plaintiffs are residents of California. (FAC ¶ 7.) T-Mobile asserts that its principal place of business is in the State of Washington. In support of this assertion, T-Mobile submits a declaration and supplemental declaration by Ms. Diane Mattis, a paralegal employed by T-Mobile. Mattis's declarations, however, are insufficient to meet T-Mobile's burden under the nerve center test. First, Mattis does not provide a description of her job duties or explain how these duties made it possible for her to obtain personal knowledge regarding the location of the direction, control, and coordination of T-Mobile's business by the executive officers. *See Martinez v. Morgan Stanley & Co. Inc.*, No. 09-CV-2937, 2010 WL 3123175, at *3 (S.D. Cal. Aug. 9,

2010) (finding a declaration of an assistant secretary to be insufficient to establish the location of the defendant-company's nerve center because, among other things, the assistant secretary "did not elaborate on her job duties or state how they made it possible for her to acquire the personal knowledge regarding where the executive officers 'direct, control, and coordinate' the company's business"). An executive officer, such as a chief executive officer, vice president of operations, or member of the board of directors, would have been better suited to testify as to the location of T-Mobile's nerve center.

Second, Mattis's declarations lack foundation. In the supplemental declaration, Mattis testifies, "I am aware of [where the majority of T-Mobile's executive and administrative functions are carried out] because in my role as Senior Paralegal, Corporate Governance, I have assisted in carrying out *some* of these core functions." (Mattis Supp. Decl. ¶ 3 (emphasis added).) It is unclear, however, which of the "core functions" she assisted in carrying out, because Mattis does not specify which of the "core functions" she assisted with. Moreover, Mattis does not indicate whether she knows anything about those that she did not carry out. Mattis has no apparent basis for knowing that any of the other core functions were not carried out in California.

Mattis testifies that "[t]he offices of T-Mobile's President and Chief Executive Officer, Chief Operations Officer, Chief Strategy Officer, Chief Legal Officer and General Counsel, Chief Financial Officer, Chief Human Resources Officer, Chief Technology Officer, and Chief Marketing Officer, are all located in T-Mobile's headquarters [in the State of Washington]." (*Id.* ¶ 4.) By itself, this is not enough. Where the officers are located, without more, does not establish where the principal place of business is located. *See Hertz*, 559 U.S. at 92-93; *Martinez*, 2010 WL 3123175, at *3 ("[T]he nerve center test . . . does not consider simply where the officers are located but where they direct, control, and coordinate the corporation's activities.").

Accordingly, T-Mobile has not met its burden of establishing that the minimal diversity requirement is met and that removal jurisdiction is proper.

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Remand to State Court is **GRANTED**. This action is once again **REMANDED** to the Superior Court of California, County of San Diego.

**IT IS SO ORDERED**.

DATED: 10/15/13

HON. ROGER T. BENITEZ
United States District Judge